BRIAN A. PATTERSON,

                Plaintiff,

    v.                                     Case No. 25-cv-1730-pp

DANNY WILBER,

                Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 7), DENYING PLAINTIFF'S MOTION TO INCREASE REQUEST FOR RELIEF (DKT. NO. 10), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE WITHOUT PREJUDICE**

---

Plaintiff Brian Patterson, who is incarcerated at Fox Lake Correctional Institution and is representing himself, filed a complaint alleging that the defendant, Danny Wilber, violated his rights under Wisconsin state law. The plaintiff allegedly helped the defendant overturn his criminal conviction which led to the defendant's release from prison and a settlement of over $6,900,000 from the City of Milwaukee in a civil case. Dkt. No. 1 at 2. The plaintiff states that he seeks repayment of funds he contributed to pay for counsel for the defendant as well as ten percent of the civil suit settlement in exchange for the years of work that he contributed to freeing the defendant. Id. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1. It also addresses the plaintiff's motion for a temporary restraining order, dkt. no. 7, and his motion

1

to increase amount requested for prejudgment attachment and injunctive relief, dkt. no. 10.

## I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. <u>See</u> 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. <u>Id.</u>

On November 13, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $73.52. Dkt. No. 6. The court received $100 from the plaintiff on November 20, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The plaintiff has paid the balance of the filing fee. Dkt. No. 12.

## II.     Screening the Complaint

### A.      Federal Screening Standard

The court next must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B). In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>,

2

851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

B.     <u>The Plaintiff's Allegations</u>

The plaintiff alleges that the court has jurisdiction over his state law claims under 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, and because he is a citizen of Wisconsin while the defendant is a citizen of Minnesota. Dkt. No. 1 at ¶1.

The plaintiff alleges that in fall 2012, while incarcerated at Waupun Correctional Institution, the defendant asked him for help finding issues to overturn the defendant's conviction. <u>Id.</u> at ¶5. The plaintiff and the defendant allegedly were "neighbors" in Waupun's Northwest Cell Hall and the proximity allowed the defendant to share his trial transcripts, exhibits and police reports with the plaintiff. <u>Id.</u> at ¶7. The plaintiff states that based on his review of these materials, he believed that City of Milwaukee Police Department detectives had conspired to frame the defendant. <u>Id.</u> at ¶¶8-9. The plaintiff's background as a

3

real estate appraiser and broker allegedly allowed him to recognize that the dimensions of the State's crime scene diagram were inaccurate. Id. at ¶10. The plaintiff states that he reconstructed the crime scene and determined that the State's diagram contained material errors suggesting that it was intentionally misrepresented. Id. at ¶11.

The plaintiff alleges that he told the defendant he believed the defendant was innocent and that he could prove Milwaukee Police Department detectives had framed him for homicide. Id. at ¶13. The plaintiff allegedly told the defendant that he could "significantly help overturning [the defendant's] conviction and that the issues [the plaintiff] discovered could get [the defendant] paid millions of dollars in a lawsuit against the City of Milwaukee." Id. He states that the defendant "promised and agreed to repay [the plaintiff] any money he contributed toward freeing [the defendant] and, in exchange for [the plaintiff's] time and effort, [the defendant] would give [the plaintiff] at least ten percent (10%) of any lawsuit settlement he received from suing the MPD that conspired to frame him." Id. at ¶14. The defendant also allegedly agreed to assist the plaintiff in getting out of prison once the defendant was freed and to "take care of" the plaintiff's daughter "the same way" the defendant would take care of his own daughter once he was released and financially able to do so. Id. at ¶¶15-16. The parties allegedly understood that this included the defendant "funding a car and/or housing" for the plaintiff's daughter if the defendant did the same for his own daughter. Id. The plaintiff states that witnesses heard the defendant make these promises to him. Id. at ¶17. Both parties allegedly

4

"agreed and understood that [the defendant] would compensate [the plaintiff] if [the defendant] received monetary compensation as a result of [the plaintiff] assisting [the defendant] in overturning his criminal conviction and receiving a settlement as a result of his wrongful conviction." Id. at ¶18.

The plaintiff alleges that based on the defendant's "inducements, promises, and agreements," the plaintiff stopped working on his own case and instead expended significant finances, time and resources researching, consulting, writing and helping retain counsel for the defendant. Id. at ¶19. The plaintiff allegedly undertook significant legal research and developed a strategy identifying cases to support grounds for the defendant to obtain postconviction relief to overturn his criminal conviction. Id. at ¶21. The plaintiff states that he began writing the defendant's *pro se* Wis. Stat. §974.06 postconviction motion as the first step toward overturning his conviction. Id. at ¶22. He says that he worked on the defendant's case for four years, consulting with the defendant and drafting affidavits for eyewitnesses, a forensic expert and a crime scene reconstruction expert. Id. at ¶¶23-26. The plaintiff asserts that on March 17, 2014, "they" filed the plaintiff's §974.06 motion. Id. at ¶28. He contends that sometime in 2014, he persuaded Attorney Gary Grass to represent the defendant at a reduced rate in an effort to get the crime scene pictures to prove that a Detective Casper intentionally misrepresented the crime scene. Id. at ¶29. The plaintiff says that in 2014 or 2015, he persuaded Attorney Thomas Kurzynski to represent the defendant at a reduced rate at a "potential evidentiary hearing." Id. at ¶30. In 2015, the plaintiff allegedly

5

persuaded Attorney Kathleen Zellner to review the defendant's motion and file. Id. at ¶31.

The plaintiff alleges that between 2012 and 2016, the defendant and his girlfriend contacted Attorney Robert Henak many times to secure representation for the defendant, but that Henak declined because the defendant couldn't pay a $25,000 retainer. Id. at ¶32. In March 2016, the plaintiff allegedly received a $40,000 settlement in a civil rights suit. Id. at ¶33. The plaintiff states that he intended to use most, if not all, of this money to maintain and support his daughter. Id. at ¶34. He states that, "as part of [the defendant's] inducements, promises, and agreements, instead of financially supporting [his] daughter, he called Attorney Henak to persuade him to represent [the defendant]." Id. at ¶35. Attorney Henak allegedly initially declined, but then the plaintiff told him that he had received a $40,000 settlement and wanted to contribute to retaining Henak to represent the defendant because the plaintiff could prove that the defendant was innocent. Id. The plaintiff states that he sent Henak the defendant's *pro se* post-conviction motion and about three weeks later, Henak agreed to represent the defendant. Id. at ¶¶36-37. The plaintiff allegedly persuaded Henak to accept a reduced initial retainer of $10,000. Id. at ¶37.

The plaintiff alleges that he directed Attorney Heather Lewis-Donnell of Loevy & Loevy to forward about $5,000 from his settlement money to the defendant's girlfriend to go toward the $10,000 retainer. Id. at ¶38. The plaintiff also states that he arranged for the defendant's girlfriend to pick up

from cold storage two fur coats that were appraised at $9,000 to sell and apply toward the balance owed to Henak. Id. at ¶39. The plaintiff alleges that in February 2019, he asked someone to mail the defendant's girlfriend a check for $1,500, with the understanding that $1,000 was to be applied toward the defendant's balance owed to Attorney Henak. Id. at ¶40. Between 2020 and 2021, the plaintiff allegedly sent the defendant's girlfriend between $3,500 and $5,000 to help her pay Attorney Henak. Id. at ¶41.

The plaintiff asserts that on August 4, 2020, United States District Court Judge William Griesbach granted the defendant's petition for writ of *habeas corpus* and ordered the State of Wisconsin to release or retry the defendant within ninety days. Id. at ¶42. The plaintiff states that "[a]lthough the District Court granted [the defendant] relief on a different claim, [the plaintiff's] foresight had the intended effect by scuttling the state's harmless error argument[.]" Id. The Court of Appeals for the Seventh Circuit allegedly affirmed the district court and observed the evidentiary "oddities" that "[t]he physical evidence posed some difficulties for the State's theory." Id. at ¶43. On December 23, 2021, the defendant allegedly was released from confinement. Id. at ¶44. Five months later, in May 2022, the Milwaukee County District Attorney allegedly dropped the case against the defendant. Id. at ¶45.

The plaintiff asserts that shortly after he helped free the defendant, the defendant asked him to research cases and outline issues to support a federal civil rights lawsuit so that he could present them to lawyers. Id. at ¶46. The

7

plaintiff states that he acquiesced and he emailed these issues to the defendant "as part of the pre-existing agreements and promises between the parties." Id.

On July 17, 2023, "based substantially on the MPD misconduct that [the plaintiff] discovered while working on [the defendant's] case, the defendant allegedly filed a federal civil rights lawsuit against the City of Milwaukee[.]" Id. at ¶47. On March 13, 2025, the City of Milwaukee allegedly settled for $6,960,000 the defendant's claims that its detectives framed him for a homicide he did not commit. Id. at ¶48.

The plaintiff alleges that despite receiving his freedom and the multi-million-dollar windfall "based largely in part on [the plaintiff's] efforts, finances, and relationship with Attorney Henak, [the defendant] has refused to honor his agreements and promises to repay and compensate [the plaintiff] and has also severed all communication despite receiving the full benefit of [the plaintiff's] assistance, efforts, and performance of his obligations under the agreements and promises made between the parties." Id. at ¶49.

The plaintiff states that in November 2025, he sent the defendant a demand letter via certified mail requesting payment and reimbursement of at least $698,000. Id. at ¶50. The defendant allegedly has not honored his agreements and promises to: "1. reimburse money [the plaintiff] contributed toward freeing [the defendant], 2. compensate [the plaintiff] at least ten percent (10%) from [the defendant's] lawsuit settlement in exchange for the time, labor, effort, energy, and resources that [the plaintiff] contributed toward freeing [the

defendant], 3. financially support [the plaintiff's] daughter, and 4. assist [the plaintiff] in getting out of prison." Id. at ¶51.

The plaintiff claims that the defendant violated his rights under Wisconsin state law for breach of contract, *quantum meruit*, unjust enrichment, promissory estoppel, fraud, conversion, intentional misrepresentation and intentional infliction of emotional distress. Id. at p. 2. He seeks $698,000 in compensatory damages, restitution for unjust enrichment, punitive damages for the defendant's fraudulent and malicious misconduct and pre- and post-judgment interest of at least eighteen percent. Id. at p. 22.

C.    Analysis

1.    *Breach of Contract*

The plaintiff claims that he and the defendant entered into "binding oral agreements" whereby the defendant promised that, "in exchange for [the plaintiff's] investigative work, financial expenditure, and assistance in securing legal representation, [the defendant] would repay [the plaintiff] any funds [the plaintiff] contributed to retaining counsel for [the defendant] help support and maintain [the plaintiff's] daughter, Bri'ahn, pay [the plaintiff] ten percent (10%) of any civil recovery arising from [the defendant's] exoneration and civil lawsuit award, and help [the plaintiff] get out of prison." Id. at ¶53. According to the plaintiff, he fully performed his obligations under the contracts, promises and agreements between the parties. Id. at ¶56. The plaintiff states that the defendant did not respond to the plaintiff's demand letter or identify any reason to support a basis for non-payment of the plaintiff's claims, thereby breaching

9

the terms of their agreement. Id. at ¶¶58, 60. He says that he suffered damages of at least $698,000 plus interest. Id. at ¶63.

The elements of a breach of contract claim in Wisconsin are: "(1) a contract between the parties that creates obligations from the defendant to the plaintiff; (2) the defendant's failure to fulfill those obligations; and (3) damages flowing from the breach." Faulman Inv., Ltd. v. Engineered Prods. & Servs., Inc., Case No. 24-CV-1460, 2026 WL 962840, at *12 (E.D. Wis. Apr. 9, 2026) (quoting Knox v. Am. Fam. Ins. Co., No. 23-CV-790, 2025 WL 1137222, at *4 (W.D. Wis. Apr. 10, 2025)).

Wisconsin Department of Correction regulations prohibit incarcerated individuals from receiving compensation for providing legal services to other incarcerated individuals. See Wis. Admin. Code §DOC 309.155(5) ("Inmates may provide legal services to other inmates except that institutions may regulate the time and place of such legal services. Compensation of any kind for the provisions of such inmate to inmate legal services is prohibited."); see also Gometz v. Henman, 807 F.2d 113, 115 (7th Cir. 1986). ("jailhouse lawyer may not (lawfully) charge for his services"). "[A] jailhouse lawyer has no right to compensation and may be punished for accepting compensation for such services." Smith v. Umbdenstock, 962 F.2d 11, *8 (7th Cir. 1992) (unpublished) (citing Johnson v. Avery, 393 U.S. 483, 490 (1969)). The terms of the alleged contract between the plaintiff and the defendant that the defendant pay the plaintiff ten percent of any award he may receive in a civil judgment to compensate the plaintiff for his investigative and legal work on the plaintiff's

10

case are against public policy because the plaintiff may not lawfully receive compensation for helping the defendants. See State *ex rel.* Heimermann v. McCaughtry, 316 Wis. 2d 355 (Table), 2008 WL 5246041, at *2 (Wis. Ct. App. Dec. 18, 2008) (alleged contract between Dodge County employee and incarcerated individual that could not lawfully be enforced, was contrary to public policy and therefore was void and unenforceable).

Even if the plaintiff could enter into a contract to be paid to help the defendant overturn his conviction, the Wisconsin Statute of Frauds, Wis. Stat. §241.02, requires that certain agreements must be in writing in order to be valid. Agreements required by the Wisconsin Statute of Frauds to be in writing include an "agreement that by its terms is not to be performed within one year from the making thereof." Wis. Stat. §241.02(1)(a). See Zick & Weber LLP v. Stangler, 364 Wis. 2d 527 (Table), 2015 WL 3495567, at *3 (Wis. Ct. App. June 4, 2015). Even if the plaintiff could have entered into a contract to receive payment in exchange for helping the defendant with his legal work and for the defendant to compensate him from the winnings from his civil lawsuit, the oral agreement would have been rendered void by the Wisconsin Statute of Frauds because it could not have been performed within a year. See Superview Network, Inc. v. SuperAmerica, a Div. of Ashland Oil, Inc., 827 F. Supp. 1392, 1397 (E.D. Wis. 1993) (citing Wis.Stat. §241.02(1)(a)). The plaintiff has not stated a claim for breach of contract.

11

## 2. *Quantum Meruit*

The plaintiff alleges that he rendered valuable services to the defendant, "including but not limited to: forensic crime scene reconstruction, trial documentary review, legal research, strategy, preparation, outlining legal issues, locating ad convincing counsel, and partially funding counsel." Dkt. No. 1 at ¶67. He states he "reasonably expected reimbursement, compensation, financial support for [his] daughter, and assistance in getting out of prison from [the defendant] under these circumstances." Id. at ¶69. The plaintiff alleges that he is entitled to the reasonable value of his services and finances of at least $678,000. Id. at ¶71.

"Recovery in quantum meruit is based upon an implied contract to pay reasonable compensation for services rendered." Strobel v. Slatter, Case No. 2023AP1004, 2025 WL 262623, at *1 (Wis. Ct. App. Jan. 22, 2025) (quoting Ramsey v. Ellis, 168 Wis. 2d 779, 785 (Wis. 1992)). Damages under quantum meruit are "measured by the reasonable value of the plaintiff's services," and calculated at "the customary rate of pay for such work in the community at the time the work was performed." Lindquist Ford, Inc. v. Middleton Motors, Inc., 557 F.3d 469, 477 (7th Cir. 2009) (quoting Ramsey,168 Wis. 2d at 785 and Mead v. Ringling, 266 Wis. 523, 529 (Wis. 1954)). "[T]o recover under quantum meruit, the plaintiff must prove that 'the defendant requested the [plaintiff's] services' and 'the plaintiff expected reasonable compensation' for the services. Id. (quoting Ramsey, 168 Wis. 2d at 784).

The plaintiff has not sufficiently alleged that he should receive damages under the doctrine of *quantum meruit.* As explained above, prison regulations preclude the plaintiff from receiving any compensation for his services, so his expectation of compensation was not reasonable. The plaintiff states that the "reasonable value" of his services and finances was at least $698,000, but that amount is based on the defendant's alleged award in his civil case, not the on the reasonable value of the plaintiff's services. Even if the plaintiff legally was entitled to receive reasonable compensation for helping the defendant with his legal case, the plaintiff has not sufficiently explained how he calculated what the reasonable value of his services would be. The plaintiff is not entitled to relief under the doctrine of *quantum meruit.*

### 3. *Unjust Enrichment*

The plaintiff states that he conferred substantial benefits on the defendant, such as "forensic crime scene reconstruction, trial documentary review, legal research, strategy, preparation, locating and convincing counsel, and partially funding counsel which led to [the defendant's] exoneration and multi-million-dollar award." Dkt. No. 1 at ¶73. According to the plaintiff, the defendant accepted and retained those benefits and it would be inequitable for the defendant to retain all the proceeds without reimbursing and compensating the plaintiff. Id. at ¶¶74-75. He asserts that the reasonable value of services and finances he provided to the defendant was at least $698,000, and that equity and justice require payment of that amount to the plaintiff. Id. at ¶¶76-77.

"[R]ecovery for unjust enrichment is based upon the inequity of allowing the defendant to retain a benefit without paying for it[.]" <u>Strobel v. Slatter</u>, Case No. 2023AP1004, 2025 WL 262623, at *1 (Wis. Ct. App. Jan. 22, 2025) (quoting <u>Ramsey</u>, 168 Wis. 2d at 785). A claim for unjust enrichment has three elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." <u>Faulman Inv., Ltd. v. Engineered Prods. & Servs., Inc.</u>, Case No. 24-CV-1460, 2026 WL 962840, at *13 (E.D. Wis. Apr. 9, 2026) (quoting <u>Sands v. Menard</u>, 379 Wis. 2d 1, 18 (Wis. 2017).

"The measure of damages under unjust enrichment is limited to the value of the benefit conferred on the defendant; any costs the plaintiff may have incurred are generally irrelevant." <u>Lindquist Ford, Inc. v. Middleton Motors, Inc.</u>, 557 F.3d 469, 476–77 (7th Cir. 2009) (quoting <u>Mgmt. Computer Servs., Inc. v. Hawkins</u>, 206 Wis. 2d 158, 188 (Wis. 1996)). "The value of the benefit may be calculated based on the prevailing price of plaintiff's services as long as those services benefited the defendant." <u>Id.</u> (citing <u>Shulse v. City of Mayville</u>, 271 N.W. 643, 647 (Wis. 1937) ("In ordinary [unjust-enrichment] cases, particularly those involving money and service, the amount of the plaintiff's recovery is the amount of money advanced or the reasonable value of the services rendered but, if the service is rendered upon some project which is of no value or benefit to the city or the city only partially benefits, the city is liable only to the extent of the benefits received.")).

14

As explained above, the plaintiff is not entitled to any compensation for helping the defendant with his legal issues because the law precludes him from receiving compensation. The plaintiff has not stated a claim for unjust enrichment.

    4.  *Promissory Estoppel*

The plaintiff asserts that the defendant "made clear and definite promises and agreements to reimburse and compensate" him, and that the plaintiff "reasonably relied on [the defendant's] agreements and promises once [the plaintiff] contributed significant time, service, labor, and limited personal funds to achieve the objectives described herein." Dkt. No. 1 at ¶¶79-80. The plaintiff states that the defendant benefited from the plaintiff's reliance on the defendant's agreements and promises, and that equity and justice require restitution and payment to the plaintiff of at least $698,000. Id. at ¶¶82, 84.

Promissory estoppel is an equitable or quasi-equitable common law doctrine intended to protect parties who have not entered into a contract but who nonetheless have incurred damages acting in reliance on promises made by another party. Don-Rick, Inc. v. QBE Americas, 995 F. Supp. 2d 863, 872 (W.D. Wis. 2014) (citing Knauf Realty, LLC v. Prudential Real Estate Affiliates, Inc., 486 F. Supp. 2d 855, 861 (W.D. Wis. 2007)); see also Hoffman v. Red Owl Stores, Inc., 26 Wis. 2d 683, 697–98 (Wis. 1965)). To prevail on a promissory estoppel claim, a plaintiff must show that (1) there was "[a] promise that the promisor should reasonably have expect[ed] to induce action or forbearance of a definite and substantial character on the part of the promisee;" (2) the

promise "induce[d] such action or forbearance;" and, (3) the "injustice can be avoided only by enforcement of the promise." <u>Don-Rick, Inc.</u>, 995 F. Supp. 2d at 872 (quoting <u>Hoffman</u>, 26 Wis. 2d at 698). "While the first two elements present issues of fact which will ordinarily be resolved by a jury, the third element—that the remedy can only be invoked where necessary to avoid injustice—is one that involves a policy decision by the court." <u>Tynan v. JBVBB, LLC</u>, 306 Wis. 2d 522, 531 (Wis. Ct. App. Nov. 6, 2027) (citing <u>Hoffman</u>, 26 Wis. 2d at 698). In making this policy decision, the court must consider several factors in determining whether injustice can be avoided only by enforcement of the promise. <u>Skebba v. Kasch</u>, 297 Wis. 2d 401, 408-09 (Wis. Ct. App. Oct. 24, 2006) (citing <u>U.S. Oil Co., Inc. v. Midwest Auto Care Servs.</u>, 150 Wis. 2d 80, 91-92 (Wis. Ct. App. Apr. 4, 1989)). Those factors include:

> (a) the availability and adequacy of other remedies, particularly cancellation and restitution;
>
> (b) the definite and substantial character of the action or forbearance in relation to the remedy sought;
>
> (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;
>
> (d) the reasonableness of the action or forbearance; [and]
>
> (e) the extent to which the action or forbearance was foreseeable by the promisor.

<u>Id.</u> (quoting <u>U.S. Oil</u>, 150 Wis. 2d at 92).

Again, the plaintiff seeks at least $698,000 to reimburse and compensate him for helping the defendant with legal work which led to the defendant's

16

conviction being overturned and a civil suit resulting in an alleged settlement of $6,900,000. Justice does not require the defendant to compensate the plaintiff for helping him with his legal work; in fact, the law prohibits such compensation. The plaintiff has not stated a claim under the doctrine of promissory estoppel.

>5.      *Fraud/Intentional Misrepresentation*

The plaintiff states that to induce him to act for the defendant's benefit, the defendant knowingly made false promises and agreements that he would reimburse and compensate the plaintiff. Dkt. No. at ¶86. The plaintiff asserts that the defendant did not intend to perform and fulfill the promises, and that the plaintiff is entitled to compensatory damages, restitution and punitive damages of at least $698,000. Id. at ¶90.

In Wisconsin, a claim of fraud or intentional misrepresentation consists of five elements: "(1) defendant made a representation of fact; (2) such representation was untrue; (3) defendant made such a representation knowing it was untrue or recklessly, without caring whether it was true or false; (4) defendant made the representation with the intent to deceive and induce plaintiff to act upon it to plaintiff's pecuniary damage; and (5) plaintiff believed such representation to be true and relied on it." Cousins Subs Sys., Inc. v. McKinney, 59 F. Supp. 2d 816, 820 (E.D. Wis. 1999) (citing Lundin v. Shimanski, 124 Wis. 2d 175, 181 (Wis. 1985)). Statements of fact must generally relate to present or preexisting facts, not something to occur in the future. Id. (citing Hartwig v. Bitter, 29 Wis. 2d 653, 656 (Wis. 1966)). "An

17

exception to the preexisting fact rule exists, however, where the promisor, at the time the promise was made, had a present intention not to perform." Id. (citing Hartwig, 29 Wis. 2d at 658). And Wis. Stat. §802.03(2) imposes a heightened pleading standard for claims of fraud—it requires that the "circumstances constituting fraud . . . shall be stated with particularity." It is not enough to accuse someone of committing "fraud"; a plaintiff must identify the specific fraudulent statements or misrepresentations and must describe the circumstances surrounding them.

The defendant allegedly agreed to compensate the plaintiff, reimburse him and support the plaintiff's daughter with any money the defendant received in a settlement from a civil rights lawsuit. The defendant allegedly made this promise sometime before his §974.06 postconviction motion was filed on March 17, 2014. But the defendant did not file his civil rights case until July 17, 2023, and the case was settled on March 13, 2025. The plaintiff cannot justifiably rely on the defendant's alleged promise to compensate him because, while incarcerated, the plaintiff could not lawfully receive compensation for helping the defendant. Moreover, in 2013 or 2014, the plaintiff could not reasonably believe that the plaintiff would receive a settlement in a civil rights case over ten years later in 2025. Finally, the plaintiff has not specifically identified each allegedly fraudulent statement and the circumstances surrounding it. In particular, he has not described the facts leading him to conclude that the defendant did not intend to honor his alleged

18

promises. The plaintiff has not stated a claim for fraud or intentional misrepresentation.

### 6. *Conversion*

The plaintiff states the "[i]n retaining the funds, repayment, and other compensation that otherwise would be due to [the plaintiff] under [the defendant's] abovementioned inducements, promises, contracts, and agreements he extended to [the plaintiff], [the defendant] has intentionally retained, controlled, or taken funds and property belonging to [the plaintiff]." Dkt. No. 1 at ¶99.

The tort of "[c]onversion is often defined as the wrongful exercise of dominion or control over a chattel[, and] [c]onversion may result from a wrongful taking or a wrongful refusal to surrender property originally lawfully obtained." Eastman Indus. v. Norlen Inc., 538 F. Supp. 2d 1069, 1071 (W.D. Wis. 2008) (quoting Production Credit Ass'n of Madison v. Nowatzski, 90 Wis. 2d 344, 354 (Wis. 1979) (citations omitted)); see also H.A. Friend & Co. v. Professional Stationery, Inc., 294 Wis. 2d 754, 763 (Wis. Ct. App. June 7, 2006) (listing three elements for conversion: "(1) intentional control or taking of property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the rights of the owner to possess the property"). The plaintiff's assertion that by taking the settlement funds, the defendant unlawfully took the plaintiff's property lacks merit. As explained above, the plaintiff could not legally receive compensation for helping the defendant with his legal work.

19

### 7. *Intentional Infliction of Emotional Distress*

The plaintiff states that during the time he "contributed significant financial and material resources, time, labor, and energy to help the defendant obtain counsel, overturn his conviction, and receiving almost Seven Million Dollars, [the plaintiff] diverted his limited financial resources away from taking care of his adolescent daughter to benefit [the defendant] since [the plaintiff] reasonably relied on [the defendant's] promises and agreement to help [the plaintiff] get out of prison and 'take care of' [the plaintiff's] daughter the same way [the defendant] would take care of [his] own daughter once [he] was financially able to do so." Dkt. No. 1 at ¶104. The plaintiff states that as a direct result of the defendant's intentional failure to honor his agreements and promises to the plaintiff—especially to help the plaintiff get out of prison and financially support the plaintiff's daughter—he has suffered severe emotional distress because, in part, he cannot financially support his daughter the way that he would have been able to had the defendant performed his obligations. Id. at ¶107.

In Wisconsin a claim for intentional infliction of emotional distress has four elements: (1) the defendant behaved as he did for the purpose of causing emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct was a cause-in-fact of the plaintiff's injury; and (4) the plaintiff suffered an extreme disabling emotional response to the defendant's conduct. Duncan v. Manning, 998 F. Supp. 2d 725, 732 (E.D. Wis. 2014) (citing Anderson v. Cont'l Ins. Co., 85 Wis. 2d 675, 695 (Wis. 1978); see

also <u>Rabideau v. City of Racine</u>, 243 Wis. 2d 486, 501 (Wis. 2001). The plaintiff has not alleged facts showing that the defendant acted for the direct purpose of causing the plaintiff emotional distress. <u>See</u> <u>Duncan</u>, 998 F. Supp. at 732 (citing <u>Rabideau</u>, 243 Wis. 2d at 502-03) (causing emotional distress must be the direct purpose of the actions and not a by-product of the action).

The plaintiff's conclusory allegation that the defendant intended to cause him harm by not compensating him for helping the defendant with his legal work does not state a claim. The defendant was released from prison and allegedly received a multi-million-dollar settlement after his conviction was overturned. The defendant's alleged failure to compensate the plaintiff for helping him was not "extreme and outrageous" especially considering that the plaintiff cannot lawfully be compensated for performing legal work while incarcerated.

### 8. *Subject-Matter Jurisdiction*

A federal court does not have jurisdiction to decide cases that involve only state-law claims unless a plaintiff can demonstrate that the court has diversity jurisdiction under 28 U.S.C. §1332. Diversity jurisdiction exists when: (1) the amount in controversy exceeds $75,000; and (2) the parties are citizens of different states. 28 U.S.C. §1332. The plaintiff alleges that he and the defendant are citizens of different states, but he has not alleged sufficient facts showing that the alleged offenses caused at least $75,000 in damages.

As explained in the preceding paragraphs, the plaintiff has not stated a claim for violation of his rights under Wisconsin state law based on allegations

21

that he should receive compensation of ten percent of the defendant's

$6,900,000 settlement for the work he did for the defendant. In addition to

compensation, the plaintiff also alleges that he is entitled to reimbursement

because he paid up to $20,000 to Attorney Henak.[1] This court lacks subject-

matter jurisdiction over any claim by the plaintiff that the defendant failed to

reimburse him, because the amount in controversy does not exceed $75,000.

To the extent that the plaintiff claims that he is entitled to punitive damages in

excess of $75,000, the complaint's allegations do not rise to the level of

outrageous conduct by the defendant. See Gianoli v. Pfleiderer, 209 Wis. 2d

509, 526-28 (Wis. Ct. App. Mar 25, 1997) (citing Brown v. Maxey, 124 Wis. 2d

426, 431 (Wis. 1985)); see also Wangen v. Ford Motor Co., 97 Wis. 2d 260, 275,

(Wis. 1980) (outrageous conduct is conduct that is malicious or in willful

disregard of the plaintiff's rights).

"The federal courts are courts of limited jurisdiction, and . . . have an

obligation at each stage of the proceedings to ensure that [they] have subject

matter jurisdiction over the dispute." Ne. Rural Elec. Membership Corp. v.

Wabash Valley Power Ass'n, Inc., 707 F.3d 883, 890 (7th Cir. 2013). If a federal

court does not have subject matter jurisdiction, it must dismiss a case. See

e.g., United States v. Furando, 40 F.4th 567, 576 (7th Cir. 2022). See also Fed.

R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-

matter jurisdiction, the court must dismiss the action."). The court generally

---

[1] This includes $5,000 toward a retainer, money from fur coats appraised at
$9,000, $1,000 in February 2019 and between $3,500 and $5,000 in 2020 and
2021.

will give a litigant at least one chance to amend a complaint before dismissing the complaint with prejudice and entering final judgment, but it need not do so where the amendment would be futile. See Zimmerman v. Bornick, 25 F.4th 491, 492 (7th Cir. 2022); Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519-20 (7th Cir. 2015); Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015).

It would be futile to allow the plaintiff to amend his complaint. The plaintiff is very thorough in its allegations and any amendment based on the plaintiff's allegations that the defendant failed to compensate him would be futile. That leaves the plaintiff's allegations that the defendant failed to reimburse him up to $20,000, as explained above. The court expresses no opinion regarding whether the plaintiff states a claim under state law based on these allegations. But if he does, the court lacks jurisdiction because the amount in controversy does not exceed $75,000. The court is dismissing the plaintiff's state law claim without prejudice, which means that he is free to file a lawsuit in state court.

### III. Plaintiff's Motion for Temporary Restraining Order (Dkt. No. 7) and Motion to Increase Amount Requested (Dkt. No. 10)

The plaintiff moved for a temporary restraining order in which he asked the court to authorize the United States Marshals Service to attach at least $700,000 of the defendant's assets and restrain the defendant from converting the funds. Dkt. No. 7. Given the court's determination that the plaintiff has not stated a claim to receive at least $698,000 in compensation from the defendant, the court will deny the plaintiff's motion. The plaintiff subsequently

filed a motion to increase the amount requested for attachment and injunction from $700,000 to $1,000,000 because he says he did not consider potential prejudgment interest. Dkt. No. 10. The court will deny that motion as well.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion for temporary restraining order. Dkt. No. 7.

The court **DENIES** the plaintiff's motion to increase amount requested. Dkt. No. 10.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE** because the court lacks subject-matter jurisdiction over the plaintiff's claim. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed

a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 25th day of June, 2026.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**